**REDACTED PURSUANT TO PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: PETROBRAS SECURITIES LITIGATION

This Document Applies To:

ALL CASES LISTED IN APPENDIX A TO
NOTICE OF MOTION

14-cv-9662 (JSR)

**MEMORANDUM OF LAW OF DEFENDANTS
ALMIR GUILHERME BARBASSA, JOSE CARLOS COSENZA,
GUILHERME DE OLIVEIRA ESTRELLA AND JOSE MIRANDA FORMIGLI FILHO
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

        A.    The Individual Defendants.......................................................................... 2

        B.    The Payment Scheme .................................................................................. 3

ARGUMENT ...................................................................................................................... 4

    I.      PLAINTIFFS' SECTION 10(b) CLAIMS AGAINST ESTRELLA, COSENZA AND FORMIGLI FAIL ................................................................... 5

        A.    Estrella, Cosenza and Formigli Did Not Have "Ultimate Authority" Over Any of the Alleged Misstatements ................................ 6

        B.    Statements of Opinion and Forward-Looking Statements Are Not Actionable ................................................................................................ 10

    II.     BARBASSA CANNOT BE HELD LIABLE FOR STATEMENTS OF OPINION OR FORWARD-LOOKING STATEMENTS IN THE ABSENCE OF ANY EVIDENCE HE KNEW OF THE EXISTENCE OF THE CARTEL ................................................................................................ 12

    III.   MANY OF THE ALLEGED MISSTATEMENTS ON WHICH PLAINTIFFS BASE THEIR CLAIMS WERE NOT MATERIALLY FALSE OR MISLEADING ................................................................................ 14

CONCLUSION ................................................................................................................. 14

**TABLE OF DEFINED TERMS**

| Term | Definition |
|---|---|
| 2012 Registration Statement | As defined in ¶ 521 of the FAC |
| FAC | Consolidated Fourth Amended Class Action Complaint |
| CAC | Consolidated Amended Complaint |
| Cartel | As defined on p. 3, infra |
| Class Period | As defined in ¶ 17 of the FAC |
| Exchange Act | Securities Exchange Act of 1934 |
| Individual Defendants | Almir Guilherme Barbassa, Jose Carlos Cosenza, Guilherme de Oliveira Estrella and Jose Miranda Formigli Filho |
| Lava Jato | As defined on p. 3, infra |
| Odebrecht | Corporation Construtora Norberto Odebrecht S/A Odebrecht |
| Payment Scheme | As defined on p. 3, infra |
| Petrobras | Petróleo Brasileiro S.A. – Petrobras |
| Petrobras Defendants | Petrobras and PGF |
| PGF | Petrobras Global Finance B.V. |
| Plaintiffs | Plaintiffs in the actions identified in Appendix A to the Individual Defendants' Notice of Motion |
| PSLRA | Private Securities Litigation Reform Act |
| 56.1 | Individual Defendants' Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried |
| RNEST | Abreu e Lima Refinery |
| SEC | Securities & Exchange Commission |

## TABLE OF DEFINED TERMS

| Term | Definition |
|------|------------|
| Securities Act | Securities Act of 1933 |
| TCU | Tribunal de Contas da União |

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Fed. R. Civ. P. 56(a) ..................................................................................................4

Securities Exchange Act of 1934, Section 10(b) .......................................................5, 6

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ..................................................................5, 6

**Cases**

Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,
888 F. Supp. 2d 431 (S.D.N.Y. 2012)......................................................................6

Allstate Ins. Co. v. Administratia Asigurarilor De Stat,
948 F. Supp. 285 (S.D.N.Y. 1996) ..........................................................................5

Celotex Corp. v. Catrett,
477 U.S. 317 (1986).................................................................................................4

City of Pontiac Gen. Emp. Ret. Sys. v. Lockheed Martin Corp.,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................6

CL-Alexanders Laing & Cruikschank v. Goldfeld,
739 F. Supp. 158 (S.D.N.Y. 1990) ..........................................................................4

Freeman Grp. v. Royal Bank of Scotland Grp. PLC,
540 F. App'x 33 (2d Cir. 2013) ..............................................................................12

Fujitsu Ltd. v. Fed. Express Corp.,
247 F.3d 423 (2d Cir. 2001).....................................................................................5

Gavin/Solmonese LLC v. D'Arnaud-Taylor,
68 F. Supp. 3d 530 (S.D.N.Y. 2014)........................................................................9

Glickenhaus & Co. v. Household Int'l, Inc.,
787 F.3d 408 (7th Cir. 2015) ...................................................................................9

In re Alstom SA,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).....................................................................10

In re Initial Pub. Offering Sec. Litig.,
241 F. Supp. 2d 291 (S.D.N.Y. 2003).......................................................................5

In re Int'l Bus. Machs. Corp. Sec. Litig.,
163 F.3d 102 (2d Cir. 1998)......................................................................................5

In re JPMorgan Chase & Co. Sec. Litig.,
No. 12 Civ. 3852, 2014 WL 1297446 (S.D.N.Y. Mar. 31, 2014) ..............................................7, 9

In re Magnum Hunter Res. Corp. Sec. Litig.,
26 F. Supp. 3d 278 (S.D.N.Y. 2014).......................................................................................... 5-6

In re Smith Barney Transfer Agent Litig.,
884 F. Supp. 2d 152 (S.D.N.Y. 2012).........................................................................................10

In re UBS AG Sec. Litig.,
No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)...........................................7, 9

Janus Capital Grp., Inc. v. First Derivative Traders,
564 U.S. 135 (2011)............................................................................................................ 6, 7-8, 9

Jeffreys v. The City of N.Y.,
426 F.3d 549 (2d Cir. 2005)..................................................................................................... 4-5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)....................................................................................................................5

Rose v. Rahfco Mgmt. Grp., LLC,
No. 13 Civ. 5804, 2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014)............................................ 9-10

SEC v. Espuelas,
699 F. Supp. 2d 655 (S.D.N.Y. 2010).........................................................................................7

Sgalambo v. McKenzie,
739 F. Supp. 2d. 453 (S.D.N.Y. 2010).........................................................................................7

Shenk v. Karmazin,
868 F. Supp. 2d 299 (S.D.N.Y. 2012).......................................................................................4, 8

Smith v. Menifee,
No. 00 Civ. 2521, 2002 WL 461514 (S.D.N.Y. Mar. 26, 2002) .....................................................4

Almir Guilherme Barbassa ("Barbassa"), Jose Carlos Cosenza ("Cosenza"),

Guilherme de Oliveira Estrella ("Estrella") and Jose Miranda Formigli Filho ("Formigli") (the

"Individual Defendants") respectfully submit this memorandum of law in support of their Rule

56(a) motion for summary judgment with respect to the Exchange Act claims.

## PRELIMINARY STATEMENT

Cosenza, Estrella, Formigli, and Barbassa are all retired executives of Petrobras

who reside in Brazil.  None is alleged to have taken bribes or otherwise been involved in the

Payment Scheme.  Nor have any been identified as a person of interest in the Lava Jato

investigation.  And there is no evidence that any of them knew about the existence of the

Payment Scheme before the Brazilian prosecutors uncovered it.  Moreover, Cosenza, Estrella

and Formigli did not sign the 2012 Registration Statement in connection with Petrobras's

offerings of notes in 2013 and 2014, and are not subject to claims under Section 11 of the

Securities Act.

Despite seeking to hold the Individual Defendants responsible for, apparently, all

of "the statements at issue in this litigation," FAC ¶ 498; 56.1 ¶ 85, Plaintiffs have never treated

these defendants as anything more than an afterthought.  Formigli, Cosenza and Estrella were not

named by Plaintiffs until the Third Amended Complaint.  Plaintiffs did not even take the

depositions of Cosenza and Estrella, despite having extra depositions to spare.

None of these retired executives worked in the Services area, which was the

division within Petrobras responsible for organizing the bids and negotiating the contracts with

the Cartel companies.  Indeed, neither Formigli nor Cosenza even had a senior management role

until after the Payment Scheme had ended.  Their seemingly random inclusion in this action is

made clear by the fact that three other members of the Executive Board during the Class Period

were <u>not</u> named in this action and yet took the same actions as those that were named on the same Executive Board.

Plaintiffs nonetheless claim that each is legally responsible for all statements made by Petrobras during his tenure at the Company, including all statements in the annual reports, the financial releases and posts on Petrobras's blog. Because they did not appear in the case until well after this Court had ruled on the parties' motions to dismiss the CAC, none have ever had these broad and generalized allegations against them tested even on the pleadings by this Court. Nor have Plaintiffs mustered any further support for their already tenuous allegations against these individuals, despite having the benefit of extensive document discovery (notably, each one of the Individual Defendants was a custodian for purposes of document production) and the opportunity to depose all of them (although they chose to depose only Formigli and Barbassa).

Plaintiffs' indiscriminate inclusion of these Individual Defendants has cluttered an already complex case. Plaintiffs should not be permitted to further extend the trial by dragging these retired executives across continents in order to defend their good names, when Plaintiffs have failed to garner even the barest modicum of evidence against them.

For the reasons set forth below, Estrella, Cosenza and Formigli are entitled to summary judgment on the Exchange Act claims asserted against them, and Barbassa is entitled to partial summary judgment on the Exchange Act claims asserted against him.

### STATEMENT OF FACTS

**A.     The Individual Defendants**

Barbassa was CFO of Petrobras and a member of its Executive Board between July 2005 and February 2015, when he retired. 56.1 ¶ 1. Cosenza was Petrobras's Director of Supply and a member of the Executive Board between April 2012, after the Payment Scheme

had ended, and February 2015, when he retired.  Id. ¶ 3.  Similarly, Formigli was Director of

Exploration and Production and a member of the Executive Board from February 2012 to

February 2015, after the Payment Scheme had ended.  Id. ¶ 7.  Estrella was Director of

Exploration and Production and a member of the Executive Board from January 2003 until he

retired in February 2012.  Id. ¶ 5.

> **B.**      **The Payment Scheme**

At the heart of this case are the operations of an illegal cartel of 27 Brazilian

contractors and suppliers (the "Cartel"), including some of Brazil's largest construction and

engineering firms, that engaged in an intricate and well-concealed scheme (the "Payment

Scheme") between 2004 and 2012 to rig bids and overcharge Petrobras on certain refinery

construction projects in Brazil (primarily in the "Downstream" or "Supply" segment).  The

Cartel used the proceeds of this scheme to bribe Brazilian political parties, elected officials or

other public officials, individual contractor personnel and certain former Petrobras executives

who were involved in the scheme.  Id. ¶ 24.  The Payment Scheme has been under investigation

in Brazil since 2014 as part of Operation Lava Jato ("Lava Jato"), id. ¶¶ 17-26, which has

resulted in 105 convictions, including numerous employees of Cartel companies who have

admitted to using bribe payments to benefit their own companies and the few former Petrobras

executives who exploited Petrobras to benefit themselves.  Neither Petrobras nor any of its

current employees have been charged in connection with the Payment Scheme.  Indeed,

Petrobras – which was deceived by the Payment Scheme – has been found to be a victim of the

scheme by the court of first instance in Brazil, the Brazilian Supreme Court and Brazilian

prosecutors, is cooperating in the investigations of the wrongdoers, and is participating as an

assistant to the Brazilian prosecutors in proceedings seeking to recover damages from Cartel

members.  Id. ¶¶ 35-37.

Based on these facts, Plaintiffs allege that Petrobras made a variety of misstatements. Most are related to Petrobras's financial statements from 2009 forward, but Plaintiffs also allege misstatements in press releases, oral comments, and blog postings. See, e.g., FAC ¶¶ 359-70.

## ARGUMENT

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Shenk v. Karmazin, 868 F. Supp. 2d 299, 305 (S.D.N.Y. 2012) (Rakoff, J.). "One of the purposes of summary judgment is 'to isolate and dispose of factually insupportable claims.'" CL-Alexanders Laing & Cruikschank v. Goldfeld, 739 F. Supp. 158, 161 (S.D.N.Y. 1990) (quoting Celotex, 477 U.S. at 323–24). Accordingly, where, as here, there are no genuine issues of material fact as to certain claims or a "part" of a claim and where summary judgment can help to narrow the issues for trial, courts have not hesitated to grant summary judgment. Fed. R. Civ. P. 56(a); Smith v. Menifee, No. 00 Civ. 2521, 2002 WL 461514, at *3 (S.D.N.Y. Mar. 26, 2002) ("Summary judgment is used appropriately 'to streamline the process for terminating frivolous claims and to concentrate [the court's] resources on meritorious litigation.'") (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

A party may not oppose summary judgment by ipse dixit. Thus, to defeat summary judgment, the nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." Jeffreys v. The City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

party]." Jeffreys, 426 F.3d at 554 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  Thus, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001).

In particular, where, as here, Plaintiffs' claims sound in fraud and "can do serious damage to the goodwill of a . . . professional person," In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 291, 325 (S.D.N.Y. 2003), summary judgment in the absence of admissible evidence is appropriate.  Moreover, dismissal of the claims against the Individual Defendants would serve "[o]ne of the principal purposes of the summary judgment rule":  "to isolate and dispose of factually insupportable claims, . . . thereby permitting courts to avoid 'protracted, expensive and harassing trials.'"  Allstate Ins. Co. v. Administratia Asigurarilor De Stat, 948 F. Supp. 285, 298 (S.D.N.Y. 1996) (citation omitted) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

For the reasons stated below, the Individual Defendants are entitled to summary judgment.

## I.    PLAINTIFFS' SECTION 10(b) CLAIMS AGAINST ESTRELLA, COSENZA AND FORMIGLI FAIL

"To state a cause of action under Section 10(b) or Rule 10b-5[,] plaintiffs must prove that [Defendants] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." In re Int'l Bus. Machs. Corp. Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998).  To prevail, Plaintiffs must show that "defendants made specific fraudulent disclosures with scienter." In re Magnum Hunter Res.

Corp. Sec. Litig., 26 F. Supp. 3d 278, 298 (S.D.N.Y. 2014), aff'd, 616 F. App'x 442 (2d Cir.

2015) (emphasis added).

### A.   Estrella, Cosenza and Formigli Did Not Have "Ultimate Authority" Over Any of the Alleged Misstatements

Liability under Section 10(b), and SEC Rule 10b-5 promulgated thereunder, for

"making" false or misleading statements is limited to individuals "with ultimate authority over

the statement, including its content and whether and how to communicate it." Janus Capital

Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011).[1]  Estrella, Cosenza and Formigli

are not makers of any misstatement alleged in the FAC.

It is telling that Class Plaintiffs are the only plaintiffs, in response to Defendants'

Second Set of Interrogatories, who have attributed any alleged misstatements to Estrella,

Cosenza and Formigli and also that they have done so on a blanket basis and indiscriminately

throughout the five-year Class Period.  56.1 ¶ 85.  None of the other individual Plaintiffs in this

litigation have attributed a single misstatement to any of the three.  Class Plaintiffs simply assert

that Estrella, Cosenza and Formigli are "liable under Section 10(b)" based on the fact that the

statements "occurred during their respective period[s] of employment" at Petrobras.  Id.

However, the mere presence of Estrella, Cosenza and Formigli on the Company's payroll is not

sufficient to establish that they exercised ultimate authority over any of the alleged

misstatements issued during the Class Period, let alone all of them.  Even before Janus, courts in

---

[1]      In the context of a motion to dismiss, this Court has held that Janus did not abrogate the "group pleading" doctrine, "which allows a plaintiff to rely on a presumption that written statements that are 'group-published,' . . . are statements made by all individuals 'with direct involvement in the everyday business of the company.'"  City of Pontiac Gen. Emp. Ret. Sys. v. Lockheed Martin Corp., 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012).  However, the "group pleading" doctrine is just that—a pleading doctrine—(the stage at issue in Lockheed Martin) and has no application to summary judgment.  Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 888 F. Supp. 2d 431, 448 (S.D.N.Y. 2012) ("Group pleading . . . is only a pleading device, and plaintiffs cannot rely on it at [summary judgment].").

this Circuit had refused to hold defendants "liable for misstatements made by others" merely because they happen to be "senior executive officers."  Sgalambo v. McKenzie, 739 F. Supp. 2d. 453, 475 (S.D.N.Y. 2010) (internal quotation marks omitted); see also SEC v. Espuelas, 699 F. Supp. 2d 655, 660–61 (S.D.N.Y. 2010) (granting summary judgment to a senior executive who had no "role in drafting, reviewing, or approving the misstatements").  Janus's requirement of "ultimate authority" only strengthens that conclusion.

First, Estrella, Cosenza and Formigli did not write, disseminate, cause or direct the dissemination of, publish, sign, or have ultimate authority over the publication of Petrobras's financial statements,[2] 56.1 ¶¶ 88- 93, and therefore cannot be held liable for Petrobras's alleged failure to disclose the Cartel or for alleged mis-accounting for the impact of the Cartel in those documents.  Janus, 564 U.S. at 142.[3]  Petrobras's financial statements were prepared by ███

███████████████████████████████████████████████████████████████

███████████ .  56.1 ¶ 50.  Neither Estrella, Cosenza, nor Formigli worked in the Finance or Accounting Departments.  Once the financial statements were prepared, they would be presented to the Executive Board, whose role was to then determine whether or not to submit them to the Board of Directors for approval.  Id. ¶ 15.  Pursuant to Petrobras's bylaws, only the Board of Directors, on which these three defendants never sat, id. ¶¶ 1-8, exercised "ultimate

---

[2]    FAC ¶¶ 227-29, 235, 242, 244, 250-52, 257, 261, 264, 266-69, 272, 278, 281, 283, 285, 292, 298, 301, 306, 313, 317, 324, 327, 331-32, 335-37, 341, 351, 357, 605-06, 609, 611-12, 615, 617, 619, 621, 626-27.  Similar statements alleged in the individual action complaints are identified in the table submitted herewith.  See Ex. 7A.

[3]    See In re UBS AG Sec. Litig., No. 07 Civ. 11225, 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012), aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,752 F.3d 173 (2d Cir. 2014) (a theory of liability premised only upon the corporate insiders' day-to-day involvement in the company's affairs "cannot survive a plain reading of the Janus decision"); In re JPMorgan Chase & Co. Sec. Litig., No. 12 Civ. 3852, 2014 WL 1297446, at *10 (S.D.N.Y. Mar. 31, 2014) (defendants could not be held liable for alleged misstatements in earnings calls where the defendants did not themselves make any of the statements at issue, even where they provided information to the individuals who did so).

authority" (the power of approval) over the Petrobras financials (id. ¶¶ 14-16).  See Janus, 546 U.S. at 142.  The power of the Executive Board—the power to recommend—does not suffice. Id.  Indeed, even without Janus, there is no evidence that any of the financial statements were attributed to any of these three defendants or were signed by any of them.

Moreover, there are other reasons why these three defendants should be granted summary judgment with respect to these statements (and why Plaintiffs took no discovery from them on the subject).  See Shenk, 868 F. Supp. 2d at 305 (granting summary judgment on fraud claim).  None of the three knew of the Cartel or the Payment Scheme, ████████████████████ ████████.  56.1 ¶ 32.  Indeed, Cosenza and Formigli were appointed to the Executive Board after the Payment Scheme had ended.  FAC ¶¶ 122, 124–126, 129.  As for Estrella, Plaintiffs allege merely that he was on the Executive Board when it approved (i) the 2006 recommendation to acquire a stake in the Pasadena refinery in Pasadena, Texas, and (ii) the 2009 recommendation to construct RNEST in the Northeast of Brazil.  Id. ¶¶ 117, 144.  But Pasadena was not a Cartel project, and Petrobras took (and publicly announced) impairment charges for it when its value fell below its balance sheet book value.  56.1 ¶¶ 66-67.  Similarly, Petrobras also publicly and accurately disclosed the cash it was paying for RNEST and the value the project was expected to return, id. ¶¶ 70-79, and there was nothing in the materials on RNEST provided to the Executive Board in 2009 that would have informed Estrella that the cash reflected accurately in the cash flow statement was misallocated on the balance sheet.  Id. ¶¶ 80-84.

Second, there is no evidence that Estrella, Cosenza or Formigli made any of the misstatements that the FAC alleges were contained in Petrobras's press releases and

sustainability reports.[4]  They did not.  56.1 ¶¶ 88-93.  While the press releases and sustainability reports contain some alleged misstatements attributed to specific individuals, none are attributed to these defendants.  Janus, 564 U.S. at 142–43 ("[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed.").  And there is no evidence that Estrella, Cosenza or Formigli exercised "ultimate authority" over any of the challenged unattributed statements in those documents, id. at 142,[5] or indeed any statements.  56.1 ¶¶ 88- 93.

Third, there is no evidence that Estrella, Cosenza or Formigli participated in any of the conference calls alleged in the FAC, let alone that they were responsible for any of the misstatements allegedly made during those calls.[6]

Fourth, Estrella, Cosenza and Formigli did not write, disseminate, cause or direct the dissemination of, publish, sign, or have ultimate authority over the publication of any of the alleged misstatements in the Fatos e Dados blog entries at issue, and thus they cannot have "made" these statements either.[7]  56.1 ¶¶ 88-93.  The fifteen blog posts referenced in the

---

[4]    FAC ¶¶ 222, 224, 230-34, 240-41, 245-49, 253-54, 256, 259-60, 265, 270-71, 274, 276-77, 284, 290-91, 295-97, 308-310, 312, 316, 321-23, 326, 338-39, 344, 350.  Similar statements alleged in the individual action complaints are identified in the table submitted herewith.  See Ex. 7A.

[5]    See Glickenhaus & Co. v. Household Int'l, Inc., 787 F.3d 408, 427 (7th Cir. 2015), reh'g denied (July 1, 2015) (to be found liable, a defendant "must have actually exercised control over the content of the press releases and whether and how they were communicated").

[6]    FAC ¶¶ 225-26, 275.  Similar statements alleged in the individual action complaints are identified in the table submitted herewith.  See Ex. 7.  See JPMorgan Chase, 2014 WL 1297446, at *10; Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d 530, 539 (S.D.N.Y. 2014), aff'd, No. 15 Civ. 160, 2016 WL 125434 (2d Cir. Jan. 12, 2016) ("Any role [defendants] played in the drafting process or in distributing the offering materials is insufficient to impose primary liability under Janus.").

[7]    FAC ¶¶ 223, 238-39, 255, 258, 288-89, 311, 320, 340, 345-46, 348-49.  Similar statements alleged in the individual action complaints are identified in the table submitted herewith.  See Ex. 7A.  See In re UBS AG Sec. Litig., 2012 WL 4471265, at *10; see also Rose

Complaint responded to statements by the TCU and press commentary about a range of Petrobras's business activities, including the purchase of the Pasadena refinery, the renegotiation of a contract with Odebrecht, bribery allegations concerning SBM Offshore, and the Company's hiring, transparency, and ethics policies.  Plaintiffs have offered no evidence to suggest that Estrella, Cosenza or Formigli had ultimate authority over any one of these various statements, let alone over the entire spectrum of posts.  Indeed, Plaintiffs have not so much as argued that these three defendants controlled the *Fatos e Dados* blog, beyond the conclusory assertion in response to contention interrogatories that all defendants are responsible for all statements made during their employment at Petrobras.  See, e.g., 56.1 ¶ 85; FAC ¶ 498.  Plaintiffs have been afforded every opportunity to make their *Fatos e Dados* blog-related claims against these defendants clear, and they have failed entirely to do so.  As no evidence demonstrates (or even suggests) that Estrella, Cosenza or Formigli had ultimate authority over any of the alleged misstatements, they are entitled to summary judgment on these claims.[8]

### B.      Statements of Opinion and Forward-Looking Statements Are Not Actionable

Among the hundreds of statements for which Plaintiffs seek to indiscriminately hold Cosenza, Estrella and Formigli responsible are many statements of opinion.  These include statements such as that the "Company's management assessed the effectiveness of [its] internal

---

v. Rahfco Mgmt. Grp., LLC, No. 13 Civ. 5804, 2014 WL 7389900, at *5 (S.D.N.Y. Dec. 15, 2014) (no liability where complaint contained no allegations that defendant filed the prospectuses or that statements therein came from defendant).

[8]      For many of the same reasons, Estrella, Cosenza and Formigli should also be granted summary judgment with respect to the Section 20(a) control persons claims against them (FAC ¶¶ 497-98).  See In re Smith Barney Transfer Agent Litig., 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (stating that, in order for a defendant to incur Section 20(a) liability, a plaintiff must do more than show that the defendant "ha[d] control person status"; instead, a plaintiff must prove that the defendant "exercised actual control over the matters at issue"); see also In re Alstom SA, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) ("[T]he Section 20(a) defendant must not only have actual control over the primary violator, but [also] have actual control over the transaction in question.") (emphasis omitted).

control over financial reporting as of December 31, 2009 and has concluded that as of December

31, 2009, [the] Company's internal control over financial reporting is effective" (FAC ¶ 228),

and that "[i]n July, Petrobras introduced its Corruption Prevention Program. . . . [Its] benefits

include reduced exposure to legal, image and reputational risk, strengthened corporate

governance, centralized efforts for the shared aim of combating fraud and corruption, and

improved relationships with stakeholders, such as partners and sources of funding" (FAC ¶ 344),

as well as many similar others.[9]   But such statements of opinion are only actionable under

Omnicare if they are not "honestly held" or omit "facts about the speaker's basis for holding that

view, and those facts conflict with what a reasonable investor would understand from the

statement itself."  ECF No. 194 at 22 ("Op.") (citing Omnicare, 135 S. Ct. at 1327).  It is

therefore fatal to Plaintiffs' claims that there is no evidence that Cosenza, Estrella and Formigli

had any involvement in, or knew about the existence of, the Payment Scheme at the time when

those statements were made.  Without that knowledge, there is nothing to suggest that these

opinions, even if attributable to them, were not honestly held, and no facts for them to omit.

　　　　　Plaintiffs also seek to hold these three defendants liable for a number of forward-

looking statements,[10] which are protected by the PSLRA safe harbor if accompanied by

"meaningful cautionary statements," or if the plaintiff fails to prove that the speaker had "actual

knowledge" that the statement was false or misleading.  Op. 25 (quoting 15 U.S.C. §§ 78u-

5(c)(1)(A) and (c)(1)(B)).  This Court has already held that the statements in paragraphs 277 and

297 of the FAC qualify for such protection, Op. 26, and the rest of the forward-looking

---

[9]　　　FAC ¶¶ 229, 231–32,  241, 247, 249, 251–52, 260, 268–69, 274, 288, 291, 297, 308–10, 323, 326–27, 331, 335–36, 339, 344.  Similar statements alleged in the individual action complaints are identified in the table submitted herewith.  See Ex. 7A.

[10]　　　FAC ¶¶ 231-33, 245, 249, 254, 275, 277, 295, 297, 321.  Similar statements alleged in the individual action complaints are identified in the table submitted herewith.  See Ex. 7B.

statements that Plaintiffs attempt to attribute to Cosenza, Estrella and Formigli merit the same treatment.  The lack of any evidence that each knew of the existence of the Payment Scheme at the time the statements were made is fatal to Plaintiffs' claims.  In addition, as set forth in the brief filed concurrently herewith in support of the Petrobras Defendants' motion for summary judgment, these statements were accompanied by the necessary cautionary language to bring them within the PSLRA safe harbor.  Petrobras Defs. Br. at 9-11.

## II.   BARBASSA CANNOT BE HELD LIABLE FOR STATEMENTS OF OPINION OR FORWARD-LOOKING STATEMENTS IN THE ABSENCE OF ANY EVIDENCE HE KNEW OF THE EXISTENCE OF THE CARTEL

Barbassa, who served in various financial roles at Petrobras for 41 years, ultimately retiring from the position of CFO in 2015, 56.1 ¶ 1, has never been connected to the Cartel, and no evidence has emerged through discovery that could either link him to the Cartel or suggest that he had any knowledge whatsoever that the Cartel existed.  Therefore, for the same reasons articulated supra, Plaintiffs' claims against him must fail to the extent that they are based on statements of opinion and forward-looking statements.

First, as noted, a statement of opinion is not actionable "unless it is not 'honestly held' or omits facts about the speaker's basis for holding that view, and those facts conflict with what a reasonable investor would understand from the statement itself."  Op. 22 (citing Omnicare, 135 S. Ct. at 1327).  Plaintiffs allege that the SOX certifications, which Barbassa signed as CFO, contained material misrepresentations to the extent that they stated that Petrobras had disclosed "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting."  FAC ¶ 216.  Descriptions of "risk-management procedures as effective" and "similar assurances of efficacy" are statements of opinion.  Freeman Grp. v. Royal Bank of Scotland Grp. PLC, 540 F. App'x 33, 37 (2d Cir. 2013).  It is therefore fatal to Plaintiffs' claims that there is no evidence that Barbassa had any involvement in, or knew

about the existence of, the Payment Scheme at the time when those statements were made.  As the existence of the Payment Scheme is the sole source of Plaintiffs' arguments about material weaknesses at Petrobras, see, e.g., FAC ¶ 218, the fact that Barbassa did not know about the Scheme defeats any claim that he believed the opinions expressed were false.  Moreover, Barbassa's undisputed testimony reflects his belief ███████████████████, 56.1 ¶ 58, and it is likewise undisputed that, prior to the revelation of the Payment Scheme in 2014, neither the Company nor its independent auditors ever identified a material weakness in Petrobras's internal controls, and that Petrobras received clean audit opinions every year from Ernst & Young Auditores Independentes S/S (2004, 2005), KPMG Auditores Independentes (2006–11) and PricewaterhouseCoopers Auditores Independentes (2012, 2013). Id. ¶ 61.

Second, Barbassa is entitled to summary judgment on the numerous forward-looking statements identified above, both because there is no evidence that he had "actual knowledge" that the statements were false when made and because the statements were accompanied by the requisite cautionary language.

Finally, Barbassa did not write, disseminate, cause or direct the dissemination of, publish, sign, or have ultimate authority over the publication of the *Fatos e Dados* blog statements at issue in this case, 56.1 ¶ 86-87, and therefore, claims against him based on those statements cannot be sustained.  Indeed, as described above, the entries do not concern the contents or accuracy of Petrobras's financial statements, and thus would not fall under the purview of the CFO.  Rather, the entries that Plaintiffs challenge generally responded to press commentary about aspects of Petrobras's business such as the purchase of the Pasadena refinery, the renegotiation of a contract with Odebrecht, bribery allegations concerning SBM Offshore,

and the Company's hiring, transparency, and ethics policies, or about statements by the TCU. Because Plaintiffs can point to no evidence creating a genuine dispute as to whether Barbassa was a maker of any of the statements in the relevant blog entries, Barbassa is entitled to summary judgment on all claims against him based on these statements.

## III.   MANY OF THE ALLEGED MISSTATEMENTS ON WHICH PLAINTIFFS BASE THEIR CLAIMS WERE NOT MATERIALLY FALSE OR MISLEADING

As explained in Sections I and II of the Petrobras Defendants' memorandum of law in support of their motion for summary judgment, submitted concurrently with the instant motion, many of the alleged misstatements on which Plaintiffs base their claims were not materially false or misleading or were not relied upon by the market.  For the same reasons set forth in that memorandum, the Individual Defendants respectfully request that the Court grant summary judgment in their favor as to claims based on those same alleged misstatements.

## CONCLUSION

For the foregoing reasons, Estrella, Cosenza and Formigli request that the Court grant summary judgment on the Exchange Act claims against them, and Barbassa requests that the Court grant partial summary judgment on the Exchange Act claims against him.

Dated: New York, New York
June 27, 2016

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
    Lewis J. Liman
    Roger A. Cooper
    Luke A. Barefoot
    Elizabeth Vicens
    Jared Gerber

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

Attorneys for the Petrobras Defendants